UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL HEFFERNAN AND JEROME P. BROWN, as Trustees of the NEW ENGLAND HEALTH CARE EMPLOYEES WELFARE FUND and the NEW ENGLAND HEALTH CARE EMPLOYEES PENSION FUND and ALMENA THOMPSON, as Trustee of the NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199 & THE CONNECTICUT NURSING HOMES TRAINING & UPGRADING FUND<br>            Plaintiffs,<br><br>      v.<br><br>ICARE MANAGEMENT, LLC; CHELSEA PLACE CARE CENTER, LLC; TRINITY HILL CARE CENTER, LLC; WINTONBURY CARE CENTER, LLC<br>            Defendants. | CIVIL ACTION NO.<br>3:02CV1025 (DJS)<br><br><br><br><br><br><br><br><br><br><br><br>April 19, 2005 |

**JOINT TRIAL MEMORANDUM**

1.   **Trial Counsel.**

For the plaintiffs:  John M. Creane, Esq. and Michael E. Passero, Esq., Law Firm of John M. Creane, 92 Cherry St., P.O. Box 170, Milford, CT  06460;  (203) 878-2419 (voice); (203) 878-6021 (facsimile); jmcreane@aol.com; michaelpassero@snet.net.

For the defendants:  Jonathan M. Starble, Esq., 1191 Farmington Ave., West Hartford, CT 06107; (860) 561-8881 (voice); (860) 561-8882 (facsimile); starble@sbcglobal.net.

  2. **Jurisdiction**.

This Court has subject matter jurisdiction over this action pursuant to Section 502(e) of ERISA, 29 U.S.C. §1132(e).

  3. **Jury/Non-jury**.

This matter will be tried to the court.

  4. **Nature of Case.**

Plaintiffs, Paul Heffernan and Jerome Brown, as trustees of the New England Health Care Employees Welfare Fund ("Welfare Fund") and the New England Health Care Employees Pension Fund ("Pension Fund"); and Almena Thompson, as trustee of the New England Health Care Employees Union, District 1199, and the Connecticut Nursing Homes Training & Upgrading Fund ("Training Fund") (hereinafter collectively "the Funds") brought this action pursuant to Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, to recover alleged delinquent contributions, interest, penalties, and liquidated damages from the defendants, iCare Management, LLC ("iCare"); Chelsea Place Care Center, LLC ("Chelsea Place"); Trinity Hill Care Center, LLC ("Trinity Hill"); and Wintonbury Care Center, LLC ("Wintonbury") (hereinafter collectively "the defendants"). The defendants asserted counterclaims against the Funds that were dismissed by the Court in its February 15, 2005 Memorandum of Decision.

      5.      **Stipulations of Fact and Law.**

1.      Plaintiff Funds are Taft-Hartley multiemployer trust funds established pursuant to written Declarations and Agreements of Trust in accordance with the provision of Section 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. §185(c)(5).

2.      Each Fund is overseen by a Board of Trustees consisting of an equal number of labor and management representatives. Paul Heffernan is a management trustee of the Welfare Fund and Pension Fund, and Jerome Brown is a union trustee of the Welfare Fund and Pension Fund. Almena Thompson is a union trustee for the Training Fund.

3.      The Welfare Fund is an "employee welfare benefit plan" as that term is defined in Section 3(1) of ERISA, 29 U.S.C. §1002(1); the Pension Fund is an "employee pension benefit plan" as that term is defined in Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A); and, the Training Fund is an "employee welfare benefit plan" as that term is defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

4.      Heffernan, Brown, and Thompson are "fiduciar[ies]" of their respective Funds as that term is defined in Section 3(21)(a) of ERISA, 29 U.S.C. § 1002(21)(a).

5.      Defendants Chelsea Place Care Center, LLC, Trinity Hill Care Center, LLC, and Wintonbury Care Center, LLC, operate long-term care facilities known, respectively, as Chelsea Place Care Center, located at 25 Lorraine Street in Hartford, Connecticut, Trinity Hill Care Center, located at 151 Hillside Avenue in Hartford, Connecticut, and Wintonbury Care Center, located at 140 Park Avenue in Bloomfield, Connecticut.  Defendant iCare Management, LLC is

located at 341 Bidwell Street in Manchester, Connecticut. Defendant iCare is the management agent for Chelsea Place, Trinity Hill and Wintonbury.

6.     With respect to the Welfare Fund, the relevant provisions of the 1999 CBA are as follows:

> Health and Welfare Fund. The Employer may choose Payment Option 1 or Payment Option 2, below. However, the Employer must notify the Union of which option it has chosen by September 9, 1999.
>
> 1. Option 1. Twenty-one percent (21%) of the gross bargaining unit payroll of participating bargaining unit employees, exclusive of employees who have not completed ninety (90) days of employment with a cap of six thousand dollars ($6,000) average annual payment per person.
>
> 2. Option 2. On April 1, 1999, nineteen percent (19%) and on July 1, 2000, twenty percent (20%) of gross bargaining unit payroll of participating bargaining unit employees, exclusive of employees who have not completed ninety (90) days of employment, with no cap.
>
> B. For either option, the Employer shall not make contributions for Wintonbury workers hired after December 29, 1995 who work fewer than twenty (20) hours a week. The number of employees working less than twenty (20) hours a week shall not exceed the number as of December 29, 1995.

7.     With respect to the Welfare Fund, the relevant provisions of the 2001 CBA are as follows:

> A. The Employer shall contribute to the New England Health and Welfare Fund as follows.
>
> 1. Effective upon execution of this agreement: Twenty-one percent (21%) of the gross bargaining unit payroll of participating bargaining unit employees, exclusive of employees who have not completed ninety (90) days of employment with a cap of six thousand dollars ($6,000) average annual payment per person.

>2. Effective January 1, 2002: Twenty-two percent (22%) of the gross bargaining unit payroll of participating bargaining unit employees, exclusive of employees who have not completed ninety (90) days of employment with a cap of six thousand five hundred dollars ($6,500) average annual payment per person.
>
>3. The cap on contributions shall be increased by two hundred and fifty dollars ($250) on January 1 of 2003, 2004, and 2005.
>
>B. Wintonbury : The Employer shall not make contributions for workers hired after December 29, 1995 who work fewer than twenty (20) hours a week. The number of employees working less than twenty (20) hours a week shall not exceed the number as of December 29, 1995.

8. With respect to the Pension Fund, the relevant provisions of the 1999 CBA are as follows:

>A. The Employer shall contribute to the New England Health Care Employees Pension Fund, and shall make monthly contributions based upon the previous month's payroll. Payments shall be due no later than thirty (30) days following the payroll month on which they are based. By way of example, an August contribution shall be based on the payroll for the month of July and shall be made no later than the thirtieth (30th) day of August.
>
>B. The contribution shall consist of a sum equal to eight percent (8%) of gross payroll of the employees for the preceding month exclusive of amounts earned by the employees for the first ninety (90) calendar days following the beginning of their employment [Wintonbury Health Care Center: and of amounts earned by part-time employees who do not regularly work twenty (20) hours of more per week].

9. With respect to the Pension Fund, the relevant provisions of the 2001 CBA are as follows:

>A. The Employer shall contribute to the New England Health Care Employees Pension Fund, and shall make monthly contributions based upon the previous month's payroll. Payments shall be due no later than thirty (30) days following the payroll month on which they are based. By

>way of example, an August contribution shall be based on the payroll for the month of July and shall be made no later than the thirtieth (30th) day of August.
>
>B. Effective June 1, 2001, the contribution shall consist of a sum equal to six percent (6%) of gross payroll of the employees for the preceding month exclusive of amounts earned by the employees for the first ninety (90) calendar days following the beginning of their employment [Wintonbury Care Center: and of amounts earned by part-time employees who do not regularly work twenty (20) hours or more per week]. On June 1, 2003, the contribution shall consist of a sum equal to eight percent (8%) of gross payroll as above described. However, the contribution will be increased to eight and one-half percent (8.5%) if determined by the fund's actuaries that such contribution is necessary to fund the current level of benefits. In any event, the contribution for the final month of the contract shall be eight percent (8%).

10.    With respect to the Training Fund, the relevant provisions of the 1999 CBA are as follows:

>A. The Employer shall contribute to the New England Health Care Employees Training Fund (the "Training Fund") and shall make monthly payments based upon the previous month's payroll.
>B. The contribution shall consist of a sum equal to one percent (1%) of the monthly gross payroll of employees in the bargaining unit [Chelsea Place and Trinity Hill: exclusive of amounts earned by employees who have not completed their probationary period].
>
>C. Payments shall be due no later than thirty (30) days following the payroll month on which they are based.

11.    With respect to the Training Fund, the relevant provisions of the 1999 CBA are as follows:

>A. The Employer shall contribute to the New England Health Care Employees Training Fund (the "Training Fund") and shall make monthly payments based upon the previous month's payroll.

> B. The contribution shall consist of a sum equal to on percent (1%) of the monthly gross payroll of employees in the bargaining unit [Chelsea Place and Trinity Hill: exclusive of amounts earned by employees who have not completed their probationary period]. No contributions shall be made for Trinity Hill until September 1, 2003.
>
> C. Payments shall be due no later than thirty (30) days following the payroll month on which they are based.

6. **Plaintiffs' Contentions.**

The plaintiffs contend that, following the court's February 15, 2005 Memorandum of Decision granting plaintiffs' Motion to Dismiss and granting in part and denying in part plaintiffs' Motion For Summary Judgment, there are only two issues left to be resolved at trial. Plaintiffs will strongly object to defendants' attempt to litigate any issues that have already been resolved by the court in its February 15, 2005 decision. The two remaining issues involve plaintiffs' claims for Welfare Fund contributions based on (1) delinquent contributions disclosed by the Fund's 2002 audit attributed to defendants' failure to include the wages of employees of Trinity Hill and Chelsea Place who worked less than 20 hours per week in the gross payroll upon which contributions are calculated; and, (2) delinquent contributions disclosed by the Fund's 2002 audit attributed to defendants' misapplication of the CBA's average annual "cap" on contributions.

Plaintiff's two remaining claims are as follows:

A. <u>Section 515 Claim For Welfare Fund Contributions Based On Payroll of Employees Working Less Than 20 Hours.</u>

One of defendants' contribution errors disclosed in the 2002 payroll audit involves the defendants' failure to include the wages of bargaining unit employees at Trinity Hill and Chelsea

7

Place who work less than 20 hours per week in the gross payroll upon which the monthly contribution payments to the Welfare Fund are calculated. In both the 1999 and 2001 versions of the CBA, contributions to the Welfare Fund are based upon a percentage of the "gross bargaining unit payroll of participating bargaining unit employees. . . ." Wages paid to Wintonbury bargaining unit employees, hired after December 29, 1995 and working fewer than twenty hours per week, are expressly excluded from the gross payroll from which the contribution amount is calculated in both versions of the CBA; there is no comparable exclusion for bargaining unit employees at the Trinity and Chelsea Place facilities.

Plaintiff Welfare Fund contends that the relevant CBA language must be construed to mean that defendants are only permitted to exclude, from the gross payroll upon which contributions to the Welfare Fund are calculated, the wages of Wintonbury's bargaining unit employees who work less than twenty hours per week. Therefore, defendants' are liable under Section 515 for delinquent contributions based on the exclusion from gross payroll of bargaining unit wages for bargaining unit employees at Trinity and Chelsea Place who worked less than 20 hours per week.

      B.    <u>Section 515 Claim For Welfare Fund Contributions Based On Defendants' Misapplication of the CBA's Average Annual "Cap" on Contributions</u>.

According to the terms of the 1999 and 2001 CBAs, employer contributions to the Welfare Fund are limited by "a cap of six thousand dollars ($6,000) average annual payment per person." (The original $6,000 cap amount increases annually from January 1, 2002 through 2005, but that fact does not affect the issue before the court). Plaintiff Welfare Fund contends

that any ambiguity resulting from use of the term "person" in the "cap" provision of the CBA is readily resolved by interpreting the term to refer to "bargaining unit employee." The "persons" whose terms and conditions of employment are established under a CBA are the bargaining unit employees on whose behalf the employer is obligated to make contributions to the Welfare Fund. Therefore, the "cap" limits contributions when total contributions reach an average of $6,000 per bargaining unit employee.

      The testimony at trial will show that the only issue not specifically defined in the bargaining agreement is the method to be used in calculating the "average annual payment per person" (i.e. "bargaining unit employee"). During the 2002 audit, the Welfare Fund and its auditors considered whether to use the total number of bargaining unit employees for whom the employer made calculations in the Plan year -- the most obvious method. However, that method would include bargaining unit employees who only worked part of the year and would have the effect of lowering the average contribution to the disadvantage of the employer and the advantage of the Fund. The Welfare Fund determined that the fairest method of calculation was to use the average number of bargaining unit employees per month that the employer contributed on throughout the year. Every bargaining unit employee's wages are included in the gross wages figure from which the contribution amount is derived, but the number of employees used to calculate the "average annual payment per person" (i.e. "bargaining unit employee") is the average monthly number of bargaining unit employees.

7. **Defendants' Contentions.**

The defendants contend that they have at all times contributed faithfully and accurately to the Funds in the manner prescribed by the 1999 and 2001 CBAs. Over the past six years, defendants Chelsea Place, Trinity Hill, and Wintonbury have collectively contributed in excess of $15 million to the Funds. The alleged delinquencies sought by the plaintiffs are based on an interpretation of the CBAs that is contrary to the contract language and the intent of the parties. In its Memorandum of Decision dated February 15, 2005, this Court agreed with the defendants that the primary contract provision at issue in this case – the Welfare Fund provision – is ambiguous and therefore requires extrinsic evidence of intent. The Funds have consistently refused to disclose or acknowledge such evidence because it overwhelmingly favors the defendants' interpretation, as discussed in detail in the defendants' Memorandum in Opposition to Summary Judgment dated August 26, 2003. There is no reasonable basis for the plaintiffs' argument that the term "participating bargaining unit employee" includes individuals who do not participate in the Welfare Fund. Similarly, there is no basis to conclude that these non-participating employees are included in the calculation of the annual "cap."

In addition to the above argument regarding the Welfare Fund language, the defendants maintain their position on all arguments raised in their Memorandum in Opposition to Summary Judgment, including the defense of estoppel, which is the subject of a pending Motion for Clarification and/or Reconsideration in Part. Also, even if the plaintiffs are able to prove that the defendants misinterpreted the CBAs in some way, the defendants are only liable to the extent that the Funds can prove they suffered actual monetary damages as a result of such misinterpretation.

8.   **Legal Issues.**

Certain legal issues in this case were decided in the Court's February 15, 2005 Memorandum of Decision granting plaintiffs' Motion To Dismiss and granting in part and denying in part plaintiffs' Motion For Summary Judgment. (The defendants' have filed a Motion For Clarification and/or Reconsideration of two of the issues. The Motion is currently pending.) The principal remaining issues to be decided in this case are factual issues involving the interpretation of two sections of the parties' CBA pertaining to Welfare Fund contributions that the Court ruled were ambiguous: (1) the employer's obligation to include the wages of under 20-hour employees at Trinity Hill and Chelsea Place in the gross payroll upon which contributions are calculated; and, (2) the meaning of the term "person" as used to calculate the " cap."

9.   **List Of Witnesses.**

For the Plaintiffs:

1.   Robert Tessier, Executive Director of the Plaintiff New England Health Care Employees Pension Fund, 77 Huyshope Avenue, 2nd Floor, Hartford, Connecticut, 06106. Mr. Tessier will testify regarding the defendants' contribution obligation to the Welfare Fund under the terms of the parties' CBA, specifically with regard to the defendants' obligation to contribute for employees working less than 20 hours per week and the defendants' erroneous application of the CBA's average annual cap on contributions.

2.   Gerard J. Frame, CPA, Buckley, Frame, Boudreau & Co., P.C., 116 Washington Avenue, P.O. Box 278, North Haven, Connecticut, 06473. Mr. Frame will testify about the 2002 audit of defendant's payroll records and the employers' erroneous contribution calculations.

3.   Jerome P. Brown, President, New England Health Care Employees Union, District 1199, SEIU, AFL-CIO, 77 Huyshope Ave., Hartford, CT 06106. Mr. Brown will be available as a possible rebuttal witness regarding any issues defendants may raise regarding the collective bargaining history.

4.   Steve Bender, Executive Director, New England Health Care Employees, District 1199 and the Connecticut Nursing Homes Training & Upgrading Fund, 77 Huyshope Ave., 2nd Floor, Hartford, CT 06106. Mr. Bender will be available as a possible rebuttal witness.

For the defendants:

1. Laura Ames. Ms. Ames, Senior Vice President of Operations for iCare Management, LLC, is expected to testify regarding the negotiation of the 2001 CBA and the intent of the parties in connection therewith.

2. Pat Cartelli. Ms. Cartelli, Payroll Manager for Chelsea Place Care Center, LLC, is expected to testify regarding the fund contribution practice of the Chelsea Place facility and the historical non-participation of certain part-time employees.

3. Chelsea Place Part-Time Employees. The defendants may call some or all of the following part-time employees of Chelsea Place Care Center, LLC to testify regarding participation in the Funds: Maria Barbosa; Ruthia Blige; Doris Brown-Bowden; Cornelia Lee; Mary Murrell; John Rosemond; Kevin Small; and Betty Woods.

4. Claudette (Vicki) Jackson. Ms. Jackson, former Staff Coordinator for Trinity Hill Care Center, LLC, is expected to testify regarding the Funds' eligibility rules for employees of Chelsea Place Care Center, LLC and Trinity Hill Care Center, LLC.

5. Hersch Krausz. Mr. Krausz, a former owner of Solomon Health Services, LLC, is expected to testify regarding the negotiation of the 1999 CBA and the intent of the parties in connection therewith.

6. Denise MacKinnon. Ms. MacKinnon, Controller of iCare Management, LLC, is expected to testify regarding historical contributions to the Funds under the 1995 CBAs, the 1999 CBA, and the 2001 CBA.

7. E. Cortright Phillips. Mr. Phillips, former state-appointed operator of the facilities at issue in this case, is expected to testify regarding the prior contribution practice of the facilities.

8. Michael Plausse. Mr. Plausse, Chief Financial Officer of iCare Management, LLC, is expected to testify regarding his review and financial analysis of contributions to the Funds based on various contractual interpretations at issue in this case.

9.  V. Robert Salazar. Mr. Salazar, a former owner of Solomon Health Services, LLC, is expected to testify regarding the negotiation of the 1999 CBA and the intent of the parties in connection therewith.

10. David Sebbag. Mr. Sebbag, a former owner of Solomon Health Services, LLC, is expected to testify regarding the negotiation of the 1999 CBA and the intent of the parties in connection therewith.

11. Trinity Hill Part-Time Employees. The defendants may call some or all of the following part-time employees of Trinity Hill Care Center, LLC to testify regarding their participation in the Funds: Maritza Cruz; Barbara Fair; Shirley Lopez; Flor Mayor; Tanya Olivera; and Mariana Ramos.

12. Chris Wright. Mr. Wright, President and Chief Executive Officer of iCare Management, LLC, is expected to testify regarding the negotiation of the 2001 CBA and the intent of the parties in connection therewith. Mr. Wright is also expected to testify regarding the defendants' contribution practice as well as communications with Funds and the Union regarding contribution issues.

10. **Exhibits.**

Plaintiffs' anticipated exhibits are as follows:

1. Initial Independent Accountant's Audit Report for Wintonbury Health Care Center for the Welfare and Pension Funds, dated February 6, 2002;
2. Initial Independent Accountant's Audit Report for Trinity Hill Health Care Center for the Welfare and Pension Funds, dated February 6, 2002;
3. Initial Independent Accountant's Audit Report for Chelsea Place for the Welfare and Pension Funds, dated February 6, 2002;
4. Initial Independent Accountant's Audit Report for Wintonbury Health Care Center for the Training & Upgrading Fund, dated February 6, 2002;
5. Demand letter from Training Fund Executive Director Steve Bender to Wintonbury Health Care Center, dated February 8, 2002, demanding payment of audit and interest;
6. Initial Independent Accountant's Audit Report for Trinity Hill Health Care Center for the Training & Upgrading Fund, dated February 6, 2002;
7. Demand letter from Training Fund Executive Director Steve Bender to Trinity Hill Health Care Center, dated February 8, 2002, demanding payment of audit and interest;
8. Initial Independent Accountant's Audit Report for Chelsea Place for the Training & Upgrading Fund, dated February 6, 2002;

9. Demand letter from Training Fund Executive Director Steve Bender to Chelsea Place, dated February 8, 2002, demanding payment of audit and interest;
10. Demand letter from Fund Counsel John M. Creane to Chris Wright, President of Defendant Icare, dated February 12, 2002, demanding payment of the audits and interest;
11. Letter dated March 1, 2002 from Fund Counsel John M. Creane to Defense Counsel Jonathan M. Starble, demanding payment of audits and notifying an ERISA suit will be file to collect delinquency;
12. Letter dated March 29, 2002 from Fund Counsel John M. Creane to Defense Counsel Jonathan M. Starble, demanding payment of audits and notifying an ERISA suit will be filed to collect delinquency;
13. Independent Accountant's Revised Audit Report for Wintonbury Health Care Center for the Welfare and Pension Funds, dated May 17, 2002;
14. Independent Accountant's Revised Audit Report for Trinity Hill Health Care Center for the Welfare and Pension Funds, dated May 17, 2002;
15. Independent Accountant's Revised Audit Report for Chelsea Place for the Welfare and Pension Funds, dated May 17, 2002;
16. Letter dated May 21, 2002 from Fund Executive Director Robert Tessier to Chris Wright, President of iCare Re: revised payroll audits;
17. Letter dated July 16, 2002 from Fund Executive Director Robert Tessier to Chris Wright, President of iCare Re: revised payroll audits;
18. Agreement and Declaration of Trust of the New England Health Care Employees Pension Fund, dated October 19, 1989.
19. Agreement and Declaration of Trust of the New England Health Care Employees Welfare Fund, dated December 4, 1986.
20. Agreement and Declaration of Trust of the New England Health Care Employees Training & Upgrading Fund, dated December 18, 1985.
21. New England Health Care Employees Pension Fund Amended Policy on Audits of Participating Employers, dated February 27, 1997.
22. New England Health Care Employees Welfare Fund Amended Policy on Audits of Participating Employers, dated February 27, 1997.
23. The New England Health Care Employees Training & Upgrading Fund adheres to the same policy as that adopted by the New England Health Care Employees Welfare Fund and the New England Health Care Employees Pension Fund.
24. New England Health Care Employees Pension Fund Policy on Collections, dated November 26, 1990.
25. New England Health Care Employees Welfare Fund Policy on Collections, dated August 25, 1994.

      26.    New England Health Care Employees Training & Upgrading Fund Policy on Collections dated October 25, 1988.

Defendants' anticipated exhibits are as follows:

A. 12/4/86 Agreement and Declaration of Trust of NEHCE Welfare Fund
B. 1/1/93 Summary Plan Description for NEHCE Welfare Fund
C. 4/20/98 Employer Bulletin from NEHCE Welfare and Pension Fund
D. 12/98 Official Plan Document and Summary of Pension Benefits from the NEHCE Pension Fund
E. 10/19/99 Agreement and Declaration of Trust of NEHCE Pension Fund
F. 1995 CBA between Union and AHF/Hartford, Inc. d/b/a Chelsea Place
G. 1995 CBA between Union and AHF/Hartford, Inc. d/b/a Trinity Hill
H. 1995 CBA between Union and AHF/Hartford, Inc. d/b/a Wintonbury Continuing Care Center
I. 11/18/98 letter from E. Cortright Phillips to George O'Connell
J. 12/4/98 letter from George E. O'Connell to E. Cortright Phillips
K. 1999 CBA between Union and Chelsea Place Care Center, LLC, Trinity Hill Care Center, LLC, and Wintonbury Care Center, LLC
L. 2001 CBA between Union and Chelsea Place Care Center, LLC, Trinity Hill Care Center, LLC, and Wintonbury Care Center, LLC
M. 1/18/02 letter from Denise MacKinnon to Christine Pane
N. 2/12/02 letter from John Creane to Chris Wright
O. 2/25/02 letter from Jonathan Starble to John Creane
P. 3/1/02 letter from John Creane to Jonathan Starble
Q. 3/19/02 letter from Jonathan Starble to John Creane
R. 3/21/02 Special Notice Re: Suspension of Employee Benefits in Cases of Employer Delinquency
S. 3/29/02 letter from John Creane to Jonathan Starble
T. 4/8/02 letter from Jonathan Starble to John Creane
U. 6/19/02 letter from Chris Wright to Robert Tessier
V. 4/23/03 letter from Denise MacKinnon to Christine Pane
W. 9/26/03 Employer Contract Report from Funds
X. 10/22/03 letter from NEHCE Pension & Welfare Fund Trustees to Employers
Y. 11/19/03 letter from NEHCE Pension & Welfare Fund Trustees to Employers
Z. 1/12/04 letter from Denise MacKinnon to Christine Pane
AA. 1/21/04 letter from Christine Pane to Denise MacKinnon
BB. NEHCE Welfare Fund coverage letters to participants
CC. Summary of Monthly Employer Contribution Reports for Chelsea Place
DD. Summary of Monthly Employer Contribution Reports for Trinity Hill
EE. Summary of Monthly Employer Contribution Reports for Wintonbury

    FF.    Charts and Tables Entitled "Analysis of Contributions Under 1999 and 2001 CBAs"

    GG.    1/25/05 Statewide Union CBA Proposal

11.    **Deposition Testimony.**

No witnesses are expected to testify by deposition at the trial. The parties do, however, reserve the right to use deposition transcripts for impeachment purposes or as admissions to the extent permitted by the Federal Rules.

12.    **Anticipated Evidentiary Problems.**

Evidentiary problems are not anticipated at this time

13.    **Proposed Findings of Fact and Conclusions of Law.**

    A.    PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW:

**Issue 1. The employers' obligation to include the wages of bargaining unit employees who work less than 20 hours per week into the gross payroll upon which contributions are calculated.**

The Court should find that the relevant CBA language must be construed to mean that defendants are only permitted to exclude, from the gross payroll upon which contributions to the Welfare Fund are calculated, the wages of Wintonbury's bargaining unit employees hired after December 29, 1995, who work less than twenty hours per week. Therefore, defendants' are liable under Section 515 for delinquent contributions based on the exclusion from gross payroll of bargaining unit wages for bargaining unit employees at Trinity and Chelsea Place who worked less than 20 hours per week as determined by the Welfare Fund's revised audit of 2002.

**Issue 2. The meaning of the term "person" as used to determine the "average annual cap" on employer contributions**

### **and the proper method for calculating and applying the annual "cap."**

The Court should find that the inherent meaning of the term "person" in the "cap" provision of the CBA is "bargaining unit employee." Therefore, the method used by the Fund auditors to calculate the cap during the revised 2002 audit was reasonable. The method of calculation was to use the average number of bargaining unit employees per month that the employer contributed on throughout the year. The "cap" should be calculated by including every bargaining unit employee's wages into the gross wages from which the monthly contribution amount is derived, but the number of "persons" (i.e. bargaining unit employees) used to calculate the "average annual payment per person" (i.e. "bargaining unit employee") is the twelve month average of the number of bargaining unit employees included in the monthly gross payroll.

### B.   DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW:

a.   The plaintiffs have failed to prove that the term "participating bargaining unit employee" was intended to include, and should be interpreted to include, employees who work fewer than 20 hours per week and who do not participate in the Welfare Fund.

b.   The plaintiffs have failed to prove that the term "person" was intended to include, and should be interpreted to include, employees who work fewer than 20 hours per week and who do not participate in the Welfare Fund.

c.   The plaintiffs have failed to prove that the Funds have suffered actual monetary damages as a result of any contractual misinterpretation by the defendants.

14. **Trial Time.**

The parties anticipate that the trial will take two days.

15. **Further Proceedings.**

The defendants believe that liability and damages should be tried together. While this may be possible, plaintiffs believe that it would be a waste of the court's resources and propose that, if the parties are unable to agree upon the amount of defendants' delinquency based on the Court's February 15, 2005 Memorandum of Decision and the Court's decision after trial on the two remaining issues in this case, a hearing in damages can be scheduled.

16. **Election For Trial By Magistrate**

Defendants do not consent to a trial by Magistrate Judge at this time.

Respectfully Submitted,

**PLAINTIFFS,**

Dated: _____    BY: _____
John M. Creane, ct06081
Michael E. Passero, ct11707
Law Firm of John M. Creane
92 Cherry St., P.O. Box 170
Milford, CT  06460
(203) 878-2419 (voice)
(203) 878-6021 (facsimile)
michaelpassero@snet.net

**DEFENDANT**

Dated: _____    BY: _____
Jonathan M. Starble, ct15825
1191 Farmington Ave.
West Hartford, CT 06107
(860) 561-8881 (voice)
(860) 561-8882 (facsimile)
starble@sbcglobal.net.

18